UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

JOHN LAVELL WILLIAMS,

                          Petitioner,                    Case No. 1:08-cv-62

v.                                              Honorable Paul L. Maloney

KEN McKEE,

                          Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner John Lavell Williams presently is incarcerated with the Michigan Department of Corrections and housed at the Bellamy Creek Correctional Facility. He currently is serving concurrent terms of seven to twenty years and two to four years, imposed by the Cheboygan County Circuit Court on June 24, 2003, after Petitioner was found guilty following a bench trial of possession with intent to deliver between 50 and 224 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(iii), and possession with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(iii). In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

> I.      PETITIONER WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN DEFENSE COUNSEL FAILED TO CHALLENGE THE ASPECT OF RACIAL BIAS BEING THE MOTIVATION BEHIND THE ILLEGAL SEARCH AND SEIZURE, WHERE THE ELEMENTS OF REASONABLE AND ARTICULABLE SUSPICION WAS [SIC] LACKING.

II. PETITIONER WAS DEPRIVED OF HIS RIGHT TO CONFRONT THE STATE'S KEY WITNESS IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHEN THE [SIC] LEARNED TRIAL JUDGE IMPROPERLY LIMITED HIS CROSS-EXAMINATION CONCERNING THE SUBJECT OF RACIAL BIAS.

III. PETITIONER WAS DEPRIVED OF HIS RIGHT TO BE SECURE AGAINST UNREASONABLE SEARCHES AND SEIZURES IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHEN DURING A ROUTINE TRAFFIC STOP, THE SITUATION TURNED INTO A DETENTION EXCEEDING THE PROPER SCOPE OF THE TRAFFIC STOP, AND TURNED INTO AN INVESTIGATION UNJUSTIFIED BY REASONABLE SUSPICION.

(Br. in Supp. of Pet. (Br.) at i, docket #3.)

Respondent has filed an answer to the petition (docket #14) stating that the grounds should be denied because they are noncognizable state law claims which have no merit or are procedurally defaulted. Upon review and applying the AEDPA standards, I find that grounds one, two and three are without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

According to facts taken from the opinion of the Michigan Court of Appeals, the convictions arose from a traffic stop on February 14, 2003. (8/5/04 Mich Ct. App. Op. (MCOA Op.) at 1, docket #24.) Petitioner was driving a vehicle northbound on I-75, proceeding toward Cheboygan with his wife and a friend. All three occupants were African-American. Petitioner was stopped by a police trooper, Jason Varoni, who clocked the vehicle traveling at 88 miles per hour. Trooper Varoni conducted a traffic stop. Petitioner presented the necessary paperwork to Varoni. During the stop, Varoni inquired where Petitioner was traveling and where he would be staying. Petitioner stated that he was going to Cheboygan to visit friends and he would be staying at the

Holiday Inn. Varoni knew there was no Holiday Inn in Cheboygan, though one was located in a nearby city. Varoni also saw no luggage in the passenger compartment. Before issuing a warning or ticket, Varoni asked Petitioner to step out of the vehicle.

Varoni inquired more fully about Petitioner's plans and the identities of his passengers. Petitioner told Varoni that he was coming from Detroit to Cheboygan and planned to stay about two days. In response to questioning, Petitioner acknowledged that he did not have any luggage in the vehicle. Petitioner also told Varoni that he previously had been arrested "for marijuana." (8/5/04 MCOA Op. at 2.) Petitioner was asked to return to his vehicle.

Varoni then questioned the other male passenger, Keithan King. King stated that he did not know where he was going or how long he would be gone. He had no luggage. King returned to the vehicle, and Varoni spoke to Petitioner's wife, Sherrie Williams. Sherrie stated that she was going to Cheboygan to shop and that they were going to stop at strip malls on the way back to Detroit. She indicated that the did not know where they would be staying and they had no reservations.

Varoni advised Petitioner that the three had made different statements, and he asked if Petitioner would consent to a search of the car. Petitioner consented, and a canine unit arrived within three minutes. The dog alerted police to an area in the back seat where the seat and backrest came together. After the dog's alert, Varoni asked Petitioner if he had a key to the trunk, and Petitioner denied carrying a key. Ultimately, a search warrant was obtained and the troopers found a bag behind a speaker box, which contained a large zip lock baggie containing marijuana and a sandwich baggie containing cocaine. Petitioner was arrested for possession with intent to deliver marijuana and cocaine.

Prior to trial, a preliminary examination was held on February 26, 2003, the court found that there was probable cause that Petitioner had committed the crimes charged. (Preliminary Examination Transcript (PE Tr.) at 107, docket # 18.) Before trial, Petitioner moved to suppress the marijuana and cocaine on the grounds that he had been subjected to an unconstitutional seizure and subsequent search. The trial court denied the motion to suppress. (4/29/03 Cheboygan County Cir. Ct. Or., docket #27, Ex. B.) Counsel then filed a motion for reconsideration, which was also denied. (5/8/03 Cheboygan County Cir. Ct. docket #27, Ex. B1.)

Following a bench trial, Petitioner was convicted of possession with intent to deliver between 50 and 224 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(iii), and possession with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(iii). (Trial Transcript (T. Tr.) at 201, docket #21.) He was sentenced to consecutive terms of seven to twenty years and two to four years, respectively. (Sentencing Transcript (S. Tr.) at 21, docket #22.)

## B. Direct Appeal

Petitioner appealed as of right arguing that the trial court erred by denying his motion to suppress evidence and by denying his motion to strike a prosecution witness. The Michigan Court of Appeals reversed Petitioner's convictions. 8/5/04 MCOA Op. at 1. The Michigan Supreme Court reversed the Court of Appeals holding "that the detention was reasonable and did not exceed the proper scope of a traffic stop." *People v. Williams*, No. 127115, Op. at 2 (Mich. May 11, 2005). The Michigan Supreme Court found that Petitioner had validly consented to the search of his vehicle and the search did not violate his Fourth Amendment rights. *Id.* Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was denied on December 5, 2005.

**C.     Post-conviction Relief**

Petitioner filed a motion for relief from judgment in the Cheboygan County Circuit Court, which was denied as amended on March 28, 2006.  (Pet., Ex. A1, docket #1)  In his motion, Petitioner raised two grounds not raised on his direct appeal: (1) that trial counsel had been ineffective in failing to challenge the racial bias behind the search and seizure; and (2) Petitioner was deprived of his right to confrontation when the trial court limited his cross-examination of Varoni concerning Varoni's racial bias.

Petitioner sought leave to appeal to the Michigan Court of Appeals, which was denied on October 26, 2006 on the grounds that Petitioner had failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  The Michigan Supreme Court denied leave on the same grounds on April 24, 2007.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411;

*accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

Petitioner raises three grounds for habeas relief. In ground one, he asserts that trial counsel rendered ineffective assistance of counsel under the Sixth Amendments by failing to assert, as a basis for invalidating the search and seizure, that Trooper Varoni was motivated by racial bias. In ground two, he contends that he was deprived of his rights under the Confrontation Clause when the trial court limited his cross-examination of Varoni. In ground three, he contends that the drug evidence was obtained in violation of his rights under the Fourth Amendment to be free from unreasonable searches and seizures.

### A.    Illegal search and seizure

Petitioner contends that drug evidence discovered by Trooper Varoni should have been suppressed because it was obtained in violation of the Fourth Amendment. Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). *See also Queen v. Scroggy*, 99

F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. Petitioner acknowledges that the trial court heard evidence and considered his motion to suppress. The Michigan Court of Appeals reviewed Petitioner's application for leave to appeal and determined that it had merit. However, in a published decision, the Michigan Supreme Court concluded that the search and seizure were reasonable. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *See Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

## B.    Ineffective assistance of counsel

Petitioner asserts that his trial counsel was ineffective for failing to challenge Trooper Varoni's motive of racial bias during his challenge to the search and seizure. Petitioner's claim is meritless.[1]

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of

---

[1]It is not clear that Petitioner has properly exhausted all the claims raised in ineffective assistance of counsel claims presented here. However, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

In *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986), the Supreme Court has held as an exception to *Stone*, 428 U.S. 465, that a claim of ineffective assistance of counsel can permissibly include a claim that trial counsel failed to litigate competently an issue under the Fourth Amendment. *See also Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003). To obtain habeas relief, "'[t]he [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice" under *Strickland*'s second prong.'" *Joshua*, 341 F.3d at 437-38 (quoting *Kimmelman*, 477 U.S. at 375).

In the instant case, defense counsel actively litigated the Fourth Amendment issue, and the state courts thoroughly addressed the issue. Petitioner contends however, that counsel was ineffective for failing to raise the question of Trooper Varoni's motivation and possible racial bias in making the stop. The Supreme Court consistently has "'been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers.'" *United States v. Knights*, 534 U.S. 112, 122 (2001) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). The *Whren* Court recognized, however, that the Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren*, 517 U.S. at 813.

A violation of the Equal Protection Clause due to selective enforcement of a law can be demonstrated if a claimant "can show that they were subjected to unequal treatment based upon their race or ethnicity during the course of an otherwise lawful traffic stop." *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533 (6th Cir. 2002). "The Supreme Court has explained that a claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id*. at 533-34 (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). "To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Discriminatory purpose can be shown by demonstrating that the "'decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Wayte*, 470 U.S. at 610 1524 (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [practice] bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. 229 (1976).

Petitioner alleges that his trial counsel was ineffective for failing to pursue a line of questioning that would demonstrate that Trooper Varoni was racially biased against Petitioner when he stopped the vehicle. Petitioner further claims that Varoni's testimony in another case could have "shown a pattern of racially selective [traffic] stops" made by Varoni. (Br. at 8.)

Varoni testified at the preliminary examination as a witness for the prosecution. Joseph Kwiatkowski, Petitioner's counsel, and Michael Hackett, counsel for Petitioner's co-

defendant King, both cross-examined Trooper Varoni. Kwiatkowski questioned Varoni about the police report, Varoni's questioning of Petitioner and his two co-defendants during the traffic stop, what answers and observations caused Varoni to become suspicious of unlawful activity, and the circumstances of the search of Petitioner's car. (T. Tr. at 28-51.) Hackett then questioned Varoni about his experience as a state trooper, Varoni's observations about the car and its occupants that led to him to pull over the vehicle, Varoni's questioning of Petitioner and his co-defendants, obtaining the search warrant and search of the car, the duration of the stop and investigation, co-defendant King's statements that the drugs belonged to him, and Varoni's subsequent interview with King. (PE Tr. at 51 - 86.) The following testimony occurred during Hackett's cross-examination:

[BY MR. HACKETT:]

Q      And have you been assigned to the Cheboygan Post your entire five-year term [as state trooper]?

A      Yes, sir.

Q      Through the entire five year period?

A      Yes.

Q      And um, how many black people have you stopped in the course of your five-year term on I-75?

        MRS. CASTAGNE [prosecutor]: Your Honor, I'm going to object unless it's somehow relevant?

        THE COURT: Relevance?

        MR. HACKETT: Your Honor, it's relevant; I'll tie it up.

        THE COURT: Okay. Answer?

BY MR. HACKETT:

A       Uh, fifty, a hundred. Maybe–

Q       Fifty to a hundred?

A       Maybe more than that, I–I don't know, I'd have to guess.

Q       How about in the year 2002, how many black people did you stop on I-75?

A       Thirty, forty, I don't know.

Q       Trooper Varoni do you stop–

> THE COURT: Hold it a minute. Tell me how you're going to connect this up?

> MR. HACKETT: Your Honor, this issue has to do with um, treatment, uh, of the Defendant's [sic] in the course of this examination and–and search.

> THE COURT: What difference does it make to the inquiry if he stopped one or a thousand?

> MR. HACKETT: Your Honor, his determination to search these people I would suggest was made because they're black.

> THE COURT: Ask him.

> MR. HACKETT: I'm gonna. Okay. But–

> THE COURT: Ask him. I don't think we need to go into other circumstance; other uh, uh, stops. I don't think what happened on those other occasions would have any relevance on this but you can ask him the question that we've discussed.

> MR. HACKETT: All right.

BY MR. HACKETT:

Q       So Officer, you stopped the Williams vehicle on I-75 as you've testified?

A       That's right.

Q    And uh, after stopping the vehicle, you approached the vehicle and you indicated to the driver that you stopped him for what?

A    For speeding.

Q    And did you indicate to the driver that you were pulling him over for any other purpose?

A.    No, sir.

Q    And were you pulling him over for any other purpose?

A    The main reason was for the speed and I noticed during the traffic stop or uh, starting to make the traffic stop the cracked windshield and the ornaments hanging off the--the rearview mirror.  (PE Tr. at 51-54.)

***

Q    All right. As you walked up to the vehicle, you then observed that they three passengers were black, is that right?

A    That's right.

Q    Had you observed their race prior to your getting up to the vehicle?

A    I saw them when they traveled past me when I was stationary.

Q    Okay. And as you saw them traveling past while you were stationary um, you hadn't at that point in time turned on your overheads, correct?

A    That's-that's right.  (PE Tr. at 55.)

***

Q    Okay. That's what he [Petitioner] said right; he was going to Cheboygan to visit friends and was going to stay at the Holiday Inn?

A    That's right, yes.

Q    And it was at that point that you ordered him out of the car?

A    Yes.

Q       If he wouldn't have been black you wouldn't have ordered him out of the car, would you?

A       No, that's not the case.

Q       You didn't have any other reason to order him out of the car other than the fact that he indicated to you he was intending to stay at the Holiday Inn?

A       That and the fact that there was no-like I said previously, there was no bags in the backseat. (PE Tr. at 56-57.)

                                        ***

Q       Did you indicate anything to Central Dispatch about the fact that uh, you had three black occupants of a motor vehicle headed northbound on I-75?

A       I don't believe so, no.

Q       I don't believe so, does that mean you could've?

A       I-I don't recall making those statements, no.

Q       Officer, could you have, just don't recall it?

A       No, I didn't say–

                MRS. CASTAGNE:   Your Honor–

A       –anything about them being black, no.

                MRS. CASTAGNE:  --I'm going to object; he asked and answered it.

BY MR. HACKETT: All right. You indicated that in your direct testimony you explained that you had stopped the Williams vehicle and were uh, stopped by the side of the road for seven to eight minutes before calling the canine car, is that correct?

A       Something like that, yes, that's right.

Q       And the canine car arrived within three minutes?

A       Yes.

Q       And you searched the vehicle that took five to ten minutes immediately following the canine car-car arriving, correct?

A       That's right.

Q       During that five to ten minutes you removed the rear seat to the vehicle?

A       Yes.

Q       Officer how many times have you ripped the rear seat of a vehicle out-out on I-75 after a traffic stop in the last five years?

A       I don't think I ever have.

Q       So you've never stopped any white people and ripped their seat out, right?

        MRS. CASTANGE: Your Honor, I'm going to object unless–

        THE COURT: Sustained.  (PE Tr. at 67-68.)

After the preliminary examination, Petitioner's counsel made a pre-trial motion to suppress the evidence obtained from the stop, which was denied.  (4/29/03 Cheboygan County Cir. Ct. Or.)  Counsel then moved for reconsideration and included the additional request that the trial court consider testimony given in another court by Trooper Varoni.  (5/8/03 Cheboygan County Cir. Ct. Or. at 2.)  Petitioner's motion for reconsideration was also denied.  (*Id.*)

        As is apparent from the preliminary examination transcript, counsel for Petitioner's co-defendant repeatedly attempted to elicit testimony from Varoni that the race of all three Defendants, including Petitioner, played a role in Varoni's decision to pull over Petitioner's car and to search it.  The preliminary hearing court specifically stated that testimony regarding the number of blacks as compared to whites that Varoni had stopped was not relevant.  (PE Tr. at 53.)  Additionally, the court sustained the prosecution's objections when co-defendant's counsel attempted to question Varoni about whether he had ripped the back seats out of any white people's

cars or only black people's cars.  (*Id.* at 67-68.)  In light of these rulings and trial court's denial of

the motion for reconsideration, Petitioner's counsel made a reasonable strategic decision to focus

his evidentiary challenge under the Fourth Amendment.  Under the first *Strickland* prong, "a court

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland,* 466

U.S. at 689 (citing *Michael*, 350 US at 101).  Petitioner's counsel's decision to pursue the stronger

claim of a Fourth Amendment violation was proven to be a good strategic decision.  The Michigan

Court of Appeals reversed the trial court's decision that there were sufficient grounds under the

Fourth Amendment to pursue an investigatory stop.  (8/5/04 MCOA Op. at 3-4.)  Although

ultimately, the Michigan Supreme Court reverse the Michigan Court of Appeals and upheld the trial

court's decision, counsel's strategy did not automatically become ineffective.  Therefore, counsel's

decision to pursue stronger the Fourth Amendment claim rather than the Equal Protection claim was

a reasonable strategic decision on the part of counsel and Petitioner fails to meet the first prong of

the *Strickland* standard.

Petitioner cannot show prejudice under the second prong of *Strickland* either.

Petitioner alleges that his counsel and co-defendant's counsel knew of Varoni's testimony in another

case that "could have shown a pattern of racially selective stops" and could have changed the

judge's decision to deny Petitioner's motion to suppress.  (Br. at 8-9.)  Petitioner asserts that

counsel's failure to submit Varoni's testimony from other cases "prevented petitioner from bringing

forth evidence which could have supported [Varoni's] racially bias[ed] pattern."  (*Id.* at 11.)

Petitioner alleges that counsel's "performance was deficient for failing to introduce evidence which

would have showed officer Varoni was racially bias[ed]." (*Id.* at 17.)  Petitioner further claims that "the stop of petitioner occurred in Cheboygan County, where the ratio of Black to White [people] is probably 1 in 100 [sic].  Therefore, [P]etitioner's attorney was obligated to explore the issue.  However, he failed to touch on the subject even thought he and co-defendant's attorney both had information which supported the claim." (*Id.* at 12.)

Petitioner makes numerous allegations that his and co-defendant's counsel had knowledge of Varoni's testimony in other matters that would support a claim of selective enforcement.  But Petitioner only speculates as to the nature of that evidence.  He does not attach a transcript or any other documentation showing what this other supposed evidence would have been.[2]  He merely argues that the unidentified testimony could have benefitted his case.  To establish that his counsel rendered ineffective assistance, Petitioner must demonstrate that he was prejudiced by his attorney's alleged shortcoming.  Mere speculation is insufficient to establish prejudice.  The Court concludes, therefore, that Petitioner has failed to meet the second prong of *Strickland* and that this claim raises no issue on which habeas relief may be granted.

## C.   Confrontation Clause

The Sixth Amendment guarantees to the criminal defendant the right "to be confronted with the witnesses against him."  The Supreme Court has held that this right "means more than being allowed to confront the witness physically.  'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.'" *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).

---

[2]A transcript of Varoni's testimony at a hearing in another matter was submitted as part of Respondent's Rule 5 submissions.  (Docket #17.)  It, however, contains no testimony about race, racial profiling, or selective enforcement.  Additionally, Petitioner has submitted nothing indicating that the materials Respondent submitted were inaccurate or incomplete.  He has made no motion to expand the record or seek additional discovery for the Court's consideration.

The Confrontation Clause generally guarantees only "an opportunity for effective cross-examination," *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). It does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 20. In *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), the Court made clear that in the exercise of this right, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." The right to present relevant evidence during cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295; *accord Rock v. Arkansas*, 483 U.S. 44, 55 (1987) ("The right to present relevant testimony is not without limitation.").

Petitioner's counsel was able to cross-examine Varoni regarding the circumstances involved in the stop. Although the cross-examination might not have been as extensive as Petitioner would have preferred, all that is guaranteed by the Confrontation Clause is "'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 557 (1988) (quoting *Fensterer*, 474 U.S. at 20). Petitioner had more than adequate opportunity to cross-examine the witness. Further, limitations by the trial court on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issue, or interrogation that is repetitive or only marginally relevant does not violate the Confrontation Clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As previously discussed, Varoni's possible racial bias in making the stop and asking questions about where Petitioner was traveling was not relevant to the constitutionality of the search and only tangentially relevant to Varoni's truthfulness. Indeed,

Petitioner's version of the course of events was not significantly different from that of Varoni. If, as the Michigan courts held, the search and seizure was based on reasonable suspicion, Varoni's potential racial bias was rendered substantially irrelevant. Accordingly, the result of the decision by the Michigan Court of Appeals was not an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Date: August 5, 2009

          /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).